**John LARSON, et al., Plaintiffs,**

v.

**Julie N. CANTRELL, et al., Defendants.**

**No. 2:97–CV–3–RL.**

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 11, 1997.

Rosalie B. Levinson, Donald P. Levinson, Merrillville, IN, Jane B. Amdahl, Joseph S. VanBokkelen, Goodman Ball VanBokkelen Leonard and Kline, Highland, IN, Ivan E. Bodensteiner, Julie B. Douglas, Valparaiso, IN, for plaintiffs.

Cindy M. Lott and Anthony W. Overholt, Office of the Indiana Atty. Gen., Indianapolis, IN, George Glendening, Hammond, IN, for Defendants.

### ORDER

LOZANO, District Judge.

This matter is before the Court on several motions. The rulings are as follows: (1) Plaintiffs' Motion for Partial Summary Judgment, filed on April 21, 1997, is **GRANTED IN PART** and **DENIED IN PART**; (2) Defendant Cantrell's Cross–Motion for Summary Judgment, filed on May 28, 1997, is **GRANTED IN PART** and **DENIED IN PART**; (3) Defendant, Lake County's, Motion for Summary Judgment, filed on May 27, 1997, is **GRANTED IN PART** and **DENIED IN PART**; (4) Motion for Leave to File Second Amended Complaint, filed by Plaintiffs on June 5, 1997, is unopposed and therefore **GRANTED**; (5) Plaintiff Thorpe's Motion to Strike § II–C of Judge Cantrell's Reply Memorandum, filed on June 24, 1997, is **GRANTED**; (6) Plaintiff's Motion for Leave to File Oversized Brief, filed on June 11, 1997, is unopposed and therefore **GRANTED**; (7) Motion for Extension of Time to File Trial Briefs, Instructions, and Voire [sic] Dire, filed on June 17, 1997, is **GRANTED** as indicated at the status/settlement conference held on 7/25/97; (8) Plaintiff's Motion to Strike, filed on June 11, 1997, is **DENIED AS MOOT**; and (9) Motion to Amend Appendix to Motion for Summary Judgment, filed by Defendant, County of Lake, on May 30, 1997, is unopposed and therefore **GRANTED**.

### BACKGROUND

This is primarily a political firing case. Plaintiffs are former court employees. Defendant, Julie Cantrell, is a judge who fired Plaintiffs after she was elected. Among other things, Plaintiffs claim they were fired for their speech and political affiliation, in violation of the First Amendment. In addition to Judge Cantrell, Plaintiffs have sued the County of Lake. Pending before the Court are a variety of motions, including most prominently several summary judgment motions.

### DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 335 (7th Cir.1991); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513–14; Nucor Corp. v. Aceros Y Maquilas de Occidente, 28 F.3d 572, 583 (7th Cir.1994).

*Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs have moved for partial summary judgment, arguing that Judge Cantrell lacked state-law authority to fire them. The parties focus their argument on a single Indiana statutory provision, which states as follows:

Sec. 8. (a) The senior judge of each division may appoint the number of bailiffs, court reporters, probation officers, and other personnel, as in the opinion of the senior judge is necessary to judicially and efficiently facilitate and transact the business of the division. All appointments shall be made without regard to the political affiliation of the appointees. The salaries of the court personnel shall be fixed and paid as provided by law. The officers and persons appointed shall:

(1) perform the duties prescribed by the senior judge of each respective division; and

(2) serve at the pleasure of the senior judge.

(b) The court shall appoint an administrative officer who shall have the duties as

the court shall determine necessary to ensure the efficient operation of the court. The court may appoint the number of deputy administrative officers as the court considers necessary to facilitate and transact the business of the court. Any appointment of an administrative officer or deputy administrative officer shall be made without regard to the political affiliation of the appointees. The salaries of the administrative officer and any deputy administrative officer shall be fixed by the court, to be paid out of the county treasury by the county auditor, upon the order of the court, and entered of record. Any administrative officer or deputy administrative officer appointed by the court shall:

> (1) operate under the jurisdiction of the chief judge; and

> (2) serve at the pleasure of the chief judge.

Ind.Code § 33–5–29.5–8. This provision lies in a portion of the Indiana Code that established a "superior court in Lake County, Indiana" (hereinafter "Lake Superior Court") and specifically outlines the operation of that court. *See* Ind.Code § 33–5–29.5–1 *et seq.* Plaintiffs all worked at the Lake Superior Court and say that under this provision, only the senior judge or chief judge had authority to fire them. The parties agree that Judge Cantrell is not the senior judge or chief judge.

The provision's plain language indicates that court employees like Plaintiffs serve "at the pleasure of" either the senior judge or chief judge. "At the pleasure of" means the senior or chief judge gets to fire the employees, not Judge Cantrell. The arguments for getting around this plain language are not persuasive.

The first argument stresses the portions of the provision stating that the senior judge or court "may" appoint employees. So, this argument goes, the senior judge or court has the option of appointing employees, but does not have to do so and can delegate that chore to someone like Judge Cantrell. Even accepting this reasoning, Plaintiffs do not contest Judge Cantrell's authority to *hire* them, but her authority to *fire* them. Although the provision may or may not allow some wiggle room on appointing authority, it allows no such room on firing authority because it

clearly says employees serve at the pleasure of the senior or chief judge.

The next argument is that the Lake Superior Court judges have always "interpreted" the provision to mean that the senior judge may consult with other judges on employment decisions, but that the other judges are not required to engage in such consultation. The Court agrees with Plaintiffs that any such interpretation just cannot be squared with the provision's plain language, which gives senior and chief judges firing authority. *Cf. Laskowski v. Mears,* 600 F.Supp. 1568, 1575 (N.D.Ind.1985) (observing that a senior judge may have "failed to follow statutory procedures" when she fired an employee whom the provision stated served at the pleasure of the chief judge).

Similarly, the final argument is that the provision lacks force because the "longstanding practice" is that the chief judge does not participate in hiring and firing court employees. Again, any informal practice adopted by the judges cannot undo the plain meaning of the provision. As part of this argument, Judge Cantrell also points out that the County Division of the Lake Superior Court has only a senior judge and no chief judge. This is just as it should be; the County Division is supposed to have a senior judge, and the Lake Superior Court as a whole is supposed to have a chief judge. Ind.Code § 33–5–29.5–19. In any event, the Court fails to see how this arrangement demonstrates that Judge Cantrell had authority to fire Plaintiffs.

Although Plaintiffs have prevailed on the arguments presented here, perhaps the parties have not covered all necessary ground. Indiana statutory provisions besides the one the parties have focused on (section 33–5–29.5–8) may bear on who wields authority to fire various personnel in the Lake Superior Court. *E.g.,* Ind.Code §§ 11–13–1–1 (probation officers), 11–13–1–2 (probation administrative personnel), 33–1–12–2 (court administrators), 33–13–4–1 (bailiffs), 33–15–23–1 (court reporters). No party has discussed whether any such provision authorized or prohibited Judge Cantrell's firing of any Plaintiff, and the Court will not do so on its own. *See Weissman v. Weener,* 12 F.3d 84,

86 (7th Cir.1993) (cautioning judges against "wander[ing] too far astray ... from the arguments presented to them by the parties").

So, the Court concludes that at least under section 33–5–29.5–8, Judge Cantrell lacked authority to fire Plaintiffs. Plaintiffs appear to claim that section 33–5–29.5–8 itself provides them with a claim, in other words, with a private cause of action. However, that provision does not expressly provide a private cause of action, and Plaintiffs have not identified any authority to that effect. Without more input from Plaintiffs, the Court will not recognize a private cause of action. Still, Plaintiffs may be asserting that by failing to follow the provision, Judge Cantrell violated their federal due process rights. *See Laskowski*, 600 F.Supp. at 1575 (treating a similar claim this way). Assuming that Plaintiffs do mean to pursue such a due process claim, the current record still does not flesh out the factual and legal particulars necessary to grant Plaintiffs actual relief on the claim.

The Court has independently considered whether certifying the issue of the meaning of section 33–5–29.5–8 to the Indiana Supreme Court would be desirable. *See A Woman's Choice–East Side Women's Clinic v. Newman*, 671 N.E.2d 104 (Ind.1996) (addressing a question certified by an Indiana federal district court). However, throughout briefing on the issue, no one, including counsel for the Indiana Attorney General's office representing Judge Cantrell, suggested that certification would be beneficial. Accordingly, the Court decided to address the issue unaided, and will not certify the issue to the Indiana Supreme Court.

*Judge Cantrell's Summary Judgment Motion*

Judge Cantrell's summary judgment motion presents two major arguments. First, she asserts that some of the Plaintiffs are unprotected employees subject to political firing.

■ Plaintiffs allege that Judge Cantrell fired them for having the "wrong" political affiliation.[1] Judge Cantrell was entitled to

do so if Plaintiffs held unprotected positions, i.e., if "party affiliation is an appropriate requirement for the effective performance" of the positions. *Flenner v. Sheahan*, 107 F.3d 459, 462–63 (7th Cir.1997) (quoting *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980)). Party affiliation is an appropriate requirement "if an employee's private political beliefs would interfere with the discharge of his public duties." *Branti*, 445 U.S. at 517, 100 S.Ct. at 1294. Or, as the Seventh Circuit has often put it, an employee is unprotected if her position "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation," *Selch v. Letts*, 5 F.3d 1040, 1043 (7th Cir.1993), in other words, she is "likely to be formulating and implementing the policies of the party in power," *Matlock v. Barnes*, 932 F.2d 658, 662 (7th Cir.1991). Although the Supreme Court has moved away from rigidly defining unprotected positions as "policymaking" and "confidential," those concepts can still be relevant to a political firing analysis. *Matlock*, 932 F.2d at 662. Whether a plaintiff held a protected position is a fact question for the jury on which the defendant bears the burden of proof. *See Milazzo v. O'Connell*, 108 F.3d 129, 132 (7th Cir.1997); *Matlock*, 932 F.2d at 663; *Soderbeck v. Burnett Cty.*, 752 F.2d 285, 288–89 (7th Cir.1985).

■ Judge Cantrell tries to show that Plaintiffs' positions are unprotected in two ways. First, she essentially argues that all Plaintiffs are unprotected because they worked very closely with her in an "intimate" chambers. *See Zorzi v. Cty. of Putnam*, 30 F.3d 885, 892–93 (7th Cir.1994) (discussing this "intimate office" doctrine). Yet Plaintiffs offer evidence showing that they themselves had little meaningful interaction with Judge Cantrell, and that roughly thirty employees work under her. With this evidence, the Court cannot resolve the inherently fact-intensive question of whether Plaintiffs were part of the sort of "intimate" chambers staff

---

1. Aside from a claim for wrongful firing for political affiliation, one Plaintiff, Thorpe, also claims that he was fired for his expression. Judge Cantrell did not argue for summary judgment on this claim until the reply brief. The Court will not address an argument raised so late; Plaintiff Thorpe's motion to strike to that effect is **GRANTED.**

that can be unprotected. *See Zorzi*, 30 F.3d at 892–93; *Meeks v. Grimes*, 779 F.2d 417, 423 (7th Cir.1985).

■ Next, Judge Cantrell argues that some of the Plaintiffs' particular positions are unprotected policymaking positions. Before proceeding to specifics, the Court will note that the parties have submitted a variety of conflicting materials that depict Plaintiffs' positions as ranging from high-level to low-level, confidential to nonconfidential, and policymaking to nonpolicymaking. Generally speaking, these materials create numerous fact issues for the jury over the true nature of the positions.

■ These fact issues exist in spite of the parties' attacks on each others' supporting materials. As for Plaintiffs, the fact issues would exist regardless of whether their motion to strike Defendants' summary judgment materials were granted or denied. Judge Cantrell attacks Plaintiffs' sworn statements given in this case as contradicting unsworn job descriptions they wrote before the case, and she argues that the sworn statements should therefore be disregarded. While a clash of sworn statements may be another thing, a clash of sworn and unsworn statements does not give reason to disregard the later statement in a summary judgment proceeding, but instead presents a credibility issue. *See Bank of Ill. v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1169 (7th Cir.1996). Also, to the extent that Judge Cantrell means to point out contradictions between sworn statements (affidavits and depositions), she has not pinpointed direct contradictions to the extent needed to invoke the harsh measure of disregarding the later statements. *See id.* at 1169–70.

Addressing Plaintiffs more specifically, authority already exists to the effect that public defender positions like Plaintiff Thorpe's are protected. *See Branti*, 445 U.S. at 519, 100 S.Ct. at 1295; *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir.1988). Judge Cantrell counters that Thorpe was not just a public defender, but instead a "chief" public defender with special duties that make him unprotected. However, whether he really had such special duties is an unresolved fact question at this point. Likewise, authority exists to the effect that bailiffs like Plaintiff

Jones are protected. *See Meeks*, 779 F.2d at 420. Judge Cantrell similarly asserts that Jones was not your usual bailiff, but rather a "chief" bailiff; once again, whether or not that is true is presently a disputed fact question. The Court cannot deem Thorpe and Jones unprotected.

Nor can it do so for the court administrator (Smith), court reporter (Haughee), and probation monitor (Sinar). These Plaintiffs have all submitted evidence suggesting that their positions are unprotected because they are "primarily ministerial" carry "little autonomy or discretion," and occupy "an extremely ... low rung on the bureaucratic ladder." *See Flenner*, 107 F.3d at 463, 465; *Upton v. Thompson*, 930 F.2d 1209, 1213 (7th Cir.1991). This evidence indicates as follows.

Court administrator Smith was a "glorified bailiff" who supervised bailiffs and the courtrooms in general, kept simple statistics, and helped members of the public find various offices and even the bathrooms. He had no authority or meaningful input on hiring, firing, discipline, or budget matters, and shared no confidences with the judges he served under. Court reporter Haughee principally did what court reporters do: skillfully but somewhat mechanically record and transcribe what happens in the courtroom. She had no authority or meaningful input on hiring, firing, and other personnel matters and did not share confidences with the judges she served under. Probation monitor Sinar describes her job as "strictly clerical." She gathered and recorded information on criminal defendants, but did not independently act on such information. She had no meaningful contact with any judge. All together, this evidence creates fact issues that allow these Plaintiffs to survive summary judgment on the issue of whether their positions are protected.

Closer calls exist for the chief probation officer (Larson) and probation officer (Tsirtsis). Unlike the other Plaintiffs, their job duties are defined, at least in part, by formal, written guidelines with the backing of law. These guidelines include a statutory provision under which a probation officer must, among other things: (1) "assist" judges in deciding whether to grant pretrial release to

persons accused of crimes; (2) "assist" in deciding how to guide accused criminals away from criminal activity; (3) "instruct," "supervise," and "assist" probationers in following the probation conditions set by judges; (4) "bring to the [judges'] attention" any "advisable" modifications to probation conditions; (5) "notify" judges when a person violates probation conditions; and (6) "collect and disburse" money according to judges' orders. Ind.Code § 11–13–1–3.

On their face, these duties sound fairly important to a judge's effectiveness. Probation officers appear to have some input in politically sensitive decisions by judges regarding criminal defendants' bail, sentencing, and rehabilitation. In this day of "law and order" politics, such decisions by an elected judge can no doubt affect the judge's ability to implement a party agenda and the voters' will.

■ Tsirtsis' affidavit attempts to downplay some of her statutory duties and alleges that she never performed others at all. Of course, the focus must be on the power inherent in the probation officer position, not the power that "any one occupant" of the position "actually exercised." *Selch*, 5 F.3d at 1042. So, Tsirtsis cannot simply side-step what the statute says the job requires by saying that she personally did something different.

■ Tsirtsis also cites Indiana authorities indicating that probation officers should not be hired or fired on the basis of their political affiliation. Ind. Probation Standards, p. 31, Pls.' Ex. 5; Ind.Code § 33–5–29.5–8. Such pronouncements do not themselves determine whether a position is protected under the First Amendment, but they do weigh in favor of protection. *Lohorn v. Michal*, 913 F.2d 327, 334 (7th Cir.1990); *Zold v. Township of Mantua*, 935 F.2d 633, 640 (3d Cir. 1991); *cf. Davis v. Scherer*, 468 U.S. 183, 195–96, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984) (ruling that officials who violate a state law do not thereby forfeit qualified immunity for federal claims).

The Court concludes that overall, Tsirtsis cannot avoid the weight of her statutorily assigned duties. At a minimum, those duties "authorize" probation officers to have "indirect" yet "meaningful input" on politically sensitive discretionary decisions by judges regarding bail, sentencing, and defendant rehabilitation. *See Selch*, 5 F.3d at 1043. Accordingly, Tsirtsis' probation officer position is unprotected, and on this point Judge Cantrell's summary judgment motion is **GRANTED.**

The result is the same for Larson, the chief probation officer. His position has all the same duties and protections as a probation officer. *See* Indiana Probation Standards, p. 2, Cantrell Exh. H; Indiana Probation Standards, p. 31, Pls.' Exh. 5; Ind.Code § 33–5–29.5–8. Logically, if Tsirtsis' position is unprotected, then so is Larson's. Even more, the chief probation officer job has other duties that give it a greater policymaking aspect. The chief is responsible to the judges for the "overall functioning of" the probation agency. Indiana Probation Standards, p. 2, Cantrell Exh. H. This makes the chief responsible for "personnel supervision, investigation, budgeting, case supervision, training and liaison with court, fee collection, office procedures, record keeping, confidentiality, statistics collection and contact with other agencies." *Id.* Larson's chief probation officer position is unprotected, and on this point, Judge Cantrell's summary judgment motion is **GRANTED.**

■ Judge Cantrell's second major argument is that she is entitled to qualified immunity. Under that doctrine, government officials enjoy immunity from damages liability unless their conduct "violate [s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Zorzi*, 30 F.3d at 891. The Supreme Court has addressed the meaning of "clearly established" as follows:

[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted) The court "must ask as a practical matter whether a reasonable official

would have understood that what she was doing was unlawful." *Gustafson v. Jones,* 117 F.3d 1015, 1021 (7th Cir.1997).

▮ The qualified immunity question here boils down to whether, in light of the law and facts, Judge Cantrell could have reasonably believed that Plaintiffs' positions are unprotected. *See Flenner,* 107 F.3d at 462; *Pounds v. Griepenstroh,* 970 F.2d 338, 340 (7th Cir.1992); *Upton,* 930 F.2d at 1213. As touched on above, the question of whether the positions are protected turns considerably on the nature of the positions, which is generally in genuine factual dispute at this point. Although qualified immunity is a question of law that a court should resolve before trial if possible, the court cannot do so where the question turns on facts that are in dispute.[2]

▮ Turning to specifics, Judge Cantrell argues that she deserves qualified immunity against the claims of all Plaintiffs on the basis of the "intimate office" doctrine discussed above. However, whether her office was intimate enough to leave her guessing as to whether she could fire Plaintiffs for their political affiliation remains a question mired in fact disputes, as covered above.

▮ Next, Judge Cantrell argues for qualified immunity position-by-position. As already suggested, existing cases would indicate to an official that public defenders like Thorpe and bailiffs like Jones hold protected positions. *See Branti,* 445 U.S. at 519, 100 S.Ct. at 1295; *Meeks,* 779 F.2d at 420. Judge Cantrell counters with evidence designed to show that Thorpe's and Jones' positions are different from the plaintiffs in those cases and different from garden-variety public defenders and bailiffs. Yet whether that is really so is an unresolved fact question at this point. Thus, the Court cannot now deem that Judge Cantrell had qualified immunity for firing Thorpe and Jones.

▮ As for the remaining Plaintiffs, cases establishing protection for their precise positions appear lacking. However, such on-point cases are not absolutely necessary to avoiding qualified immunity. *Flenner,* 107

F.3d at 465. As already touched on, any position that is "primarily ministerial," carries "little autonomy or discretion," and occupies an "extremely ... low rung on the bureaucratic ladder" is clearly protected, even if no case has specifically deemed it so. *Flenner,* 107 F.3d at 463, 465; *Upton,* 930 F.2d at 1213. Any government official should realize that firing, say, a floor-sweeper for political reasons is forbidden, even if no case has come down saying as much. As covered earlier, fact issues exist over whether Smith (court administrator), Sinar (probation monitor), and Haughee (court reporter) were low enough on the ladder to make it clear that Judge Cantrell could not fire them for political affiliation. Thus, Judge Cantrell does not receive qualified immunity on their claims at this time.

As for Larson (chief probation officer) and Tsirtsis (probation officer), the Court need not address whether they are subject to qualified immunity because it has already deemed their positions unprotected. However, the Court will note that had it not deemed the positions unprotected, it would have granted qualified immunity. Any closeness on the calls of whether they are protected only shows that if they were deemed protected, that protection would not be "clearly established."

*County of Lake's Motion for Summary Judgment*

County of Lake has moved for summary judgment, essentially arguing that it is not responsible for Plaintiffs' being fired. In response, Plaintiffs offer several reasons why the County is liable to them. None is persuasive.

▮ First, Plaintiffs say that the county attorney participated in "decisions relating to" their firing and acted as the agent of the County in doing so. As the "decisions relating to," Plaintiffs appear to be referring to their allegation that the county attorney and Judge Cantrell agreed ("conspired" for brevity) to withhold pay that the public defender Plaintiffs (Thorpe plus Shaver) are entitled to under an earlier order of this Court. Yet

---

**2.** *See McMath v. City of Gary,* 976 F.2d 1026, 1031–32 (7th Cir.1992); *Apostol v. Landau,* 957 F.2d 339, 342 (7th Cir.1992); *Jones v. City of Chicago,* 856 F.2d 985, 994–95 (7th Cir.1988);

*Wrigley v. Greanias,* 842 F.2d 955, 958 (7th Cir. 1988); *Green v. Carlson,* 826 F.2d 647, 651 (7th Cir.1987).

even if the county attorney did this, he did it after Judge Cantrell fired Plaintiffs. So, Plaintiffs offer no proof that the attorney participated in the principal wrong they complain of, namely, being fired. However, as indicated at the outset of this order, the Court will allow Plaintiffs to amend their complaint by adding due process claims based on the alleged pay-withholding conspiracy, so they will be able to proceed on those claims against the County.

The second reason offered for holding the County liable is that Judge Cantrell was acting as the County's policymaker on employment matters when she fired Plaintiffs. Plaintiffs stress that they are county employees because they are on the County's payroll and eligible to receive employment benefits from the County. So, Plaintiffs reason, in firing them, Judge Cantrell was acting on the County's behalf, even if she acts as a state judicial officer in other matters. *Cf. Woods v. City of Michigan City,* 940 F.2d 275, 279 (7th Cir.1991) (stating that Indiana Superior Court judges are state judicial officers and not county officials). Plaintiffs rely in large part on a recent Supreme Court decision which ruled that an Alabama "county" sheriff actually acted as a state policymaker when executing his law enforcement duties. *McMillian v. Monroe Cty.,* —— U.S. ——, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *cf. Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 1300 n. 12, 89 L.Ed.2d 452 (1986) (noting that a "County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy").

This reason was effectively disposed of above in addressing Judge Cantrell's authority under section 33–5–29.5–8. As noted, no one has produced Indiana law showing that Judge Cantrell had any authority to fire Plaintiffs. The only law raised by the parties suggests that only the senior or chief judge had that authority. So, as portrayed in the current record, Judge Cantrell was acting without any authority, state or county, when she fired Plaintiffs. Perhaps a senior or

chief judge acts as a county policymaker when firing court employees covered by section 33–5–29.5–8; the judge would be using valid authority given by the legislature, with the only question being whether the judge uses the authority on behalf of the state or the county. But when Judge Cantrell fires employees, it appears she is purporting to use authority that only others possess, so she is not acting on behalf of the County or even the state. To show that Judge Cantrell was acting as the policymaker for the County like in *McMillian,* Plaintiffs must point to some authority, likely state law, that put her in that role. *See McMillian,* —— U.S. at ——, 117 S.Ct. at 1737 (stating that the "inquiry is dependent on an analysis of state law"). They have not done so; in fact, they have all but done the opposite.

Plaintiffs' third reason is that the County delegated to the senior judge the authority to hire and fire the two public defender Plaintiffs. Plaintiffs point out that the Indiana legislature gave the County the option of forming a public defender board, *see* Ind.Code § 33–9–15–3, and they argue that when the County declined the option, it thereby delegated its hiring and firing authority over public defenders to the senior judge of the Lake Superior Court, County Division, under the auspices of section 33–5–29.5–8.

Yet Plaintiffs do not offer any evidence showing that the County affirmatively delegated hiring and firing authority. Rather, their argument boils down to the naked proposition that if the County had the authority to form the public defender board, did not use it, and Judge Cantrell fired the public defenders, then the County must have delegated firing authority to the senior judge. This reasoning is not affirmative proof that the County told the senior judge that she could hire and fire public defenders; to say that one left power unused is not proof that one delegated the power away. Also, even assuming the County did delegate its firing authority to the senior judge, the senior judge did not do the firing here, Judge Cantrell did.[3]

---

3. Plaintiffs have not argued in so many words that the senior judge delegated her firing authority to Judge Cantrell, *see City of St. Louis v.*

*Praprotnik,* 485 U.S. 112, 126–27, 108 S.Ct. 915, 925–26, 99 L.Ed.2d 107 (1988); *Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12, and

Plaintiffs' final reason for holding the County liable is that the County is a necessary party under Federal Rule of Civil Procedure 19. However, this reason seems merely another way of asserting the pay-withholding conspiracy claim discussed above. It does not present any new ground for holding the County liable. Also, to the extent that Plaintiffs' goal is to keep the County "in the case" because it may end up on the hook for paying damages as a practical matter, that goal should be ensured by the amended complaint the Court has allowed Plaintiffs to file, which contains due process claims against the County.

Thus, the Court finds untenable the theories expressed in Plaintiffs' current briefs. This ruling establishes that Plaintiffs may not hold the County liable for Judge Cantrell's firing them; to that extent, the County's summary judgment motion is **GRANTED**. This ruling does not address any other claims against the County that may be contained in the second amended complaint; to the extent the County's summary judgment motion was directed at such other claims, the motion is **DENIED**.

*CONCLUSION*

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; Defendant Cantrell's Cross–Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; Defendant, Lake County's, Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; Plaintiffs' Motion for Leave to File Second Amended Complaint is unopposed and therefore **GRANTED**; Plaintiff Thorpe's Motion to Strike § II–C of Judge Cantrell's Reply Memorandum is **GRANTED**; Plaintiff's Motion for Leave to File Oversized Brief is unopposed and therefore **GRANTED**; the Motion for Extension of Time to File Trial Briefs, Instructions, and Voire [sic] Dire is **GRANTED** as indicated at the status/settlement conference held on 7/25/97; Plaintiff's Motion to Strike is **DENIED AS MOOT**; and Defendant, County of Lake's, Motion to Amend Appendix to Mo-

tion for Summary Judgment is unopposed and therefore **GRANTED**.

the Court will not make that potentially complicated argument for them. Similarly, Plaintiffs have not argued "custom." *See Pembaur,* 475 U.S. at 481 n. 9, 106 S.Ct. at 1299 n. 9.