**William EVANOUSKI, Plaintiffs,**

v.

**Julie N. CANTRELL, et al., Defendants.**

**No. 2:98–CV–125–RL.**

United States District Court, N.D. Indiana, Hammond Division.

July 22, 1999.

Michael E. Halpin, Gary, IN, for Plaintiffs.

Anthony W. Overhold, Indiana Attorney General, Indianapolis, IN, George C. Patrick, Etzler, Schreinder and Malloy, P.C., Schererville, IN, John S. Dull, Dull and Duggan, Merrillville, IN, John P. Bushemi, Merrillville, IN, for Defendants.

### *ORDER*

LOZANO, District Judge.

This matter is before the Court on Defendant Cantrell's Motion for Summary Judgment, filed on December 30, 1998, and the Petition to Certify Questions to the Indiana Supreme Court, filed by Defendant, County of Lake, on September 30, 1998, and previously taken under advisement. For the reasons set forth below, the Motion for Summary Judgment is **DENIED,** and the Petition to Certify is **DENIED** with leave to refile.

*BACKGROUND*

In fall 1996, Julie Cantrell was elected as a state judge, replacing Judge Anthony

Trapane. William Evanouski had been working for Judge Trapane. At about the time she took office, Judge Cantrell fired Evanouski (according to Evanouski) or refused to hire him (according to Judge Cantrell). Evanouski has sued several Defendants, alleging, *inter alia,* that Judge Cantrell violated the First Amendment by firing him for his political affiliation and speech. Judge Cantrell has moved for summary judgment. Also, before Judge Cantrell's motion was filed, another Defendant, the County of Lake, filed a motion asking this Court to certify several questions to the Indiana Supreme Court, which motion this Court took under advisement.

*DISCUSSION*

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *NUCOR Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988); *see also Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.[1]

Evanouski alleges that Judge Cantrell fired him for his political affiliation, in violation of the First Amendment. Judge

---

1. In responding to Judge Cantrell's summary judgment motion, Evanouski failed to file the statement required by Northern District of Indiana Local Rule 56.1. In so doing, Evanouski's counsel took the risk that the Court would accept Judge Cantrell's fact statement as true. N.D.Ind.L.R. 56.1. In the present ruling, the Court has not applied Local Rule 56.1 strictly against Evanouski. Counsel should not count on such treatment in the future.

Cantrell retorts that Evanouski had no First Amendment protection because he was a probation officer. Indeed, in an earlier case dealing with staff changes Judge Cantrell made after her election, this Court ruled that Indiana probation officers are unprotected. *Larson v. Cantrell*, 974 F.Supp. 1211, 1217 (N.D.Ind. 1997); *see also Klunk v. County of St. Joseph*, 170 F.3d 772, 776 (7th Cir.1999) (citing *Cantrell*). Evanouski argues that he was not a probation officer, but a bailiff who performed a few ministerial tasks for the probation department on a temporary basis when the department was short-handed. For her part, Judge Cantrell asserts that Evanouski was a probation officer who at most performed a few ministerial tasks outside the role of probation officer.

Evanouski's evidence comes chiefly in the form of declarations from Judge Trapane and court employees. According to Judge Trapane, in the fall of 1996, the fall when Judge Cantrell was elected, he assigned Evanouski to assist in the probation department. Evanouski was then working as a bailiff and was not certified as a probation officer. The probation department was short-handed and falling behind, and Judge Trapane thought it needed auxiliary personnel to help with routine work that did not require professional credentials or judgment. Evanouski's assignment was to handle only routine matters in the department, such as completing forms, and he was to refer any matters requiring professional judgment to a certified probation officer. Evanouski was paid out of probation funds because of budgeting exigencies, but was to continue his regular bailiff duties and remain under the supervision of the chief bailiff. Evanouski's duties in the probation department were temporary only, and the plan was that once a certified probation officer returned, Evanouski would return to being a full-time bailiff and receiving a bailiff's salary. Before Evanouski, Judge Trapane had assigned at least four other employees to serve as temporary probation personnel in much the same manner.

According to the declaration of Chief Probation Officer John Larson, Evanouski helped out in the probation department for about six weeks in November and December of 1996. Evanouski was not a certified probation officer and was assigned to the department only temporarily to fill in for Helen Newby, an officer who was on sick leave. Evanouski's function was strictly temporary and auxiliary, and he was not to make any decisions affecting any defendant's rights and duties. The only duties Larson assigned Evanouski were completing computer-generated forms, collecting fees, and managing Newby's cases in such a way as to determine which ones needed the attention of a certified probation officer. Evanouski continued to perform bailiff duties while he was working in the probation department. Evanouski was not the first person to perform auxiliary duties for probation from time to time. The declaration of Colleen Sinar, a secretary in the probation office, essentially tracks Larson's affidavit. The declaration of Sally Tonkovich, the court's office administrator, does the same, adding as well that Evanouski, like others before him, was paid of a probation officer's salary slot due to budgetary concerns.

For his part, Evanouski says in his declaration that he was employed as a bailiff in the court throughout 1996. He essentially tracks the other declarations in his descriptions of the duties he performed in the probation department in the fall of 1996. He also states that Probation Officer Betty Dominguez closely supervised him while he worked in the probation department, instructing him on how to fill out routine forms, and telling him to refer any matters requiring a probation officer's judgment to an officer. Overall, the extent of his duties was filling in pre-printed forms, collecting fees when no one else was available to do so, answering the phone, and performing in-take on Newby's cases in such a way that she could manage the cases when she returned. Evanouski was to return to his bailiff duties exclusively and his bailiff pay when Newby got back

from sick leave. Evanouski had no interest in becoming and was not qualified to become a certified probation officer. Evanouski further states that on December 17, 1996, he received a letter from judge-elect Cantrell, stating: "Please be advised that as of January 1, 1997, your services will no longer be needed in Lake Superior Court County Division III."

These declarations create a fact issue as to whether Evanouski was a probation officer or acting as one at the time he received Judge Cantrell's letter. Taken in the light most favorable to Evanouski, the evidence shows that he was a bailiff, unqualified to be a probation officer, who helped out temporarily in the probation department by performing only ministerial tasks that did not require a probation officer's credentials or expertise. As such, unlike the decision in the earlier *Cantrell* case, it cannot be said that Evanouski was categorically without First Amendment protection. Of course, as Judge Cantrell stresses, "the focus must be on the power inherent in the probation officer position, not the power that 'any one occupant' of the position 'actually exercised.'" *Cantrell,* 974 F.Supp. at 1217 (quoting *Selch v. Letts,* 5 F.3d 1040, 1042 (7th Cir.1993)). But here a fact issue exists over whether Evanouski actually ever occupied the position of probation officer.

Judge Cantrell also raises the doctrine of qualified immunity. Under that doctrine, once Evanouski establishes that his allegations make out a violation of a constitutional right, the inquiry becomes whether the that right was clearly established. *See Cantrell,* 974 F.Supp. at 1217. As in the earlier *Cantrell* case:

The qualified immunity question here boils down to whether, in light of the law and facts, Judqe Cantrell could have reasonably believed that [Evanouski's] position[ ][is] unprotected. As touched on above, the question of whether the position[ ][is] protected turns considerably on the nature of the position[ ], which is generally in genuine factual dispute at this point. Although qualified immunity is a question of law that a

court should resolve before trial if possible, the court cannot do so where the question turns on facts that are in dispute.

974 F.Supp. at 1218 (citations and footnote omitted). Moreover, "existing cases would indicate to an official that ... bailiffs ... hold protected positions" and that persons holding purely ministerial positions low on the bureaucratic ladder are generally protected as well. *Id.* at 1216, 1218. Because of factual uncertainty, Judge Cantrell is not entitled to qualified immunity at this point. *See id.* at 1218.

■ Judge Cantrell's arguments that Evanouski is unprotected because he wrote grants, that he is unprotected under the "intimate office" doctrine, and that she is entitled to qualified immunity because Evanouski's rights were unclear due to the grant-writing and intimate office doctrine are similarly fact-bound and do not justify summary judgment. *See id.* at 1215, 1218. The evidence touching on Evanouski's grant-writing activity and the intimacy of the office Judge Cantrell supervises is perhaps one-sided, but still not so overwhelming as to justify summary judgment. *See Zorzi v. County of Putnam,* 30 F.3d 885, 893 (7th Cir.1994). Granted, the Seventh Circuit has suggested that a judge's chambers is the perfect example of an "intimate office" in which everyone working under the judge is unprotected. *Meeks v. Grimes,* 779 F.2d 417, 423 (7th Cir.1985). Yet, the *Meeks* court also stated that "with respect to an individual judge's chambers [the intimate office doctrine] may refer only to the judge's secretary, the law clerks, and possibly a court reporter or bailiff assigned exclusively to the judge." *Id.* Thirty-two people work in the office that Judge Cantrell attempts to portray as "intimate," and the evidence at hand regarding the place in that office held by Evanouski—arguably a bailiff who helped probation temporarily with only ministerial tasks—is not so strong as to justify summary judgment.

■ Judge Cantrell argues that Evanouski has failed to make out a prima facie case because he never applied for a job on her staff. In so arguing, Judge Cantrell colors this as a failure-to-hire case rather than a firing case. She states that until she "took office on January 2, 1997, [she] did not employ the Plaintiff or any other person on the Division III staff. As the new judge in Division III, [she] had to appoint those persons who would be serving as the probation officers in her court." Judge Cantrell cites Indiana Code section 11–13–1–2 for this proposition. It states in full:

> The court authorized to appoint probation officers shall appoint administrative personnel needed to properly discharge the probation function. These personnel serve at the pleasure of the appointing court. The amount and time of payment of salaries of administrative personnel shall be fixed by the court to be paid out of the county or city treasury by the county auditor or city controller.

The plain language of this provision simply does not support the proposition that Evanouski had no job until Judge Cantrell hired him. Judge Cantrell offers no authority or argument to put a gloss on the language that would support her position. She cites only a Title VII case that clearly was a failure-to-hire case. *Lee v. Nat'l Can Corp.*, 699 F.2d 932 (7th Cir.1983). Moreover, to the extent that the statute means no probation officer had a job until Judge Cantrell said so, as covered above the evidence suggests that Evanouski was a bailiff. Overall, this argument is not persuasive.

Judge Cantrell additionally attacks Evanouski's First Amendment free speech claim and state law claims. As she has framed these attacks, they depend on her succeeding on the arguments already rejected. As such, the additional attacks are rejected.

Before Judge Cantrell filed her summary judgment motion, County of Lake filed a petition asking this Court to certify questions to the Indiana Supreme Court. This Court took that petition under advisement, noting that as of then, no party had filed a dispositive motion, and that it was necessary to wait to see what issues were presented in the dispositive motions before deciding what questions, if any, warranted certification to the Indiana Supreme Court. Judge Cantrell's summary judgment motion and Evanouski's response do not identify any questions that might warrant certification. At present, there are no other dispositive motions pending. This Court sees no reason to let County of Lake's petition to certify questions pend indefinitely based on the mere possibility that certifiable questions may come up in the future. Accordingly, the petition is **DENIED,** with leave to refile at an appropriate time.

*CONCLUSION*

For the foregoing reasons, Defendant Cantrell's Motion for Summary Judgment is **DENIED,** and the Petition to Certify Questions to the Indiana Supreme Court is **DENIED,** with leave to refile.