FLAUM, Circuit Judge.
 

 Appellants Albert Flenner and William Glover, former Cook County correctional officers, allege that Michael F. Sheahan, the Sheriff of Cook County, initiated discharge proceedings against them due to their affiliation with the Cook County Republican Party. Claiming that Sheahan violated their First and Fourteenth Amendment rights to be free from patronage employment practices, Flen-ner and Glover brought suit under Title 42, section 1983. Sheriff Sheahan raised the affirmative defense of qualified immunity, and moved the district court for judgment on the pleadings. The district court granted his motion, holding that Sheriff Sheahan was entitled to qualified immunity because the law concerning patronage dismissal of corree
 
 [1]
 
 tional officers was not clearly established in 1993, the time of the alleged constitutional violation. Because we conclude that the district court erred in determining that appellants could prove no set of facts sufficient to support their claim for relief, we reverse the district court’s judgment and remand the case for further proceedings.
 

 I.
 

 Albert Flenner and William Glover were hired as Cook County correctional officers
 
 *-1123
 
 by the Republican administration of Sheriff James O’Grady on August 10, 1989 and January 2, 1990, respectively. Appellants were active members of the Cook County Republican Party, and both had campaigned on behalf of former Sheriff O’Grady. In the December 1990 general election, Sheriff Sheahan defeated O’Grady. Appellants allege that Sheriff Sheahan instructed the Inspector General for the Cook County Sheriff to compile a list of names of employees of the Sheriffs Department who had been hired by the O’Grady administration and to screen those employees to determine whether they had answered truthfully all of the questions on their employment applications. Making a misrepresentation on an application for employment constitutes a ground for dismissal.
 

 Sheahan initiated complaints against appellants in January 1993. Hearings were held before the Cook County Merit Board, which resulted in appellants’ dismissal in February 1993. According to appellants’ complaint, Glover did in fact have a high school diploma, although the finding of the Merit Board was to the contrary. While Flenner did not have a high school diploma at the time he applied for his position, he alleges that he subsequently obtained one while still employed as a correctional officer.
 

 Appellants claim that these charges were a pretext for terminating them because of their political affiliation. They allege that three correctional officers, none of whom had graduated from high school, were hired by the Sheahan administration. These officers were sponsored by either the Cook County Democratic Party or Sheriff Sheahan himself for positions identical to the positions held by appellants. Although all three misrepresented on their applications that they had a high school diploma or the equivalent of a diploma, these officers were permitted to obtain G.E.D.’s and to remain employed as Cook County correctional officers.
 

 II.
 

 We review
 
 de novo
 
 an order granting a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.
 
 See GATX Leasing Corp. v. National Union Fire Ins. Co.,
 
 64 F.3d 1112, 1114 (7th Cir.1995);
 
 Craigs, Inc. v. General Elec. Capital Corp.,
 
 12 F.3d 686, 688 (7th Cir.1993). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b): the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party.
 
 See Frey v. Bank One,
 
 91 F.3d 45, 46 (7th Cir.1996);
 
 Church v. General Motors Corp.,
 
 74 F.3d 795, 798 (7th Cir.1996);
 
 GATX Leasing Corp.,
 
 64 F.3d at 1114;
 
 Craigs, Inc.,
 
 12 F.3d at 688.
 

 Appellants have alleged that Sheriff Sheahan initiated discharge proceedings against them because of their political affiliation and, for purposes of reviewing appellee’s motion for judgment on the pleadings, we accept these allegations as true. Sheriff Sheahan does not contest, for purposes of this motion, that filing complaints against appellants because of their political affiliation would constitute a violation of their constitutional rights. Our inquiry therefore is limited to Sheriff Sheahan’s claim that, even if all of appellants’ allegations are true, he is entitled to qualified immunity.
 

 “The defense of qualified immunity shields government officials performing discretionary functions ‘from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’”
 
 See Smith v. Fruin,
 
 28 F.3d 646, 650 (7th Cir.1994) (quoting
 
 Harlow v. Fitzgerald,
 
 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982));
 
 Marshall v. Allen,
 
 984 F.2d 787, 791 (7th Cir.1993). Qualified immunity is therefore a defense which is “contingent on the state of the law” at the time of the alleged constitutional violation.
 
 See Smith,
 
 28 F.3d at 650 (quoting
 
 Elliott v. Thomas,
 
 937 F.2d 338, 341 (7th Cir.1991));
 
 Marshall,
 
 984 F.2d at 792. “When the law is settled on a particular point, public employees are expected to conform their conduct accordingly, and they may be held liable when they do not.”
 
 Smith,
 
 28 F.3d at 650. Conversely, government offi
 
 *-1122
 
 cials cannot “reasonably be expected to anticipate subsequent legal developments” or “to ‘know5 that the law forbade conduct not previously identified as unlawful.”
 
 Harlow,
 
 457 U.S. at 818, 102 S.Ct. at 2738. Qualified immunity thereby serves the public interest in deterring unlawful conduct without paralyzing government decisionmakers by placing on them the onerous burden of predicting the law’s evolution.
 
 See id.; Pounds v. Griepenstroh,
 
 970 F.2d 338, 340 (7th Cir.1992) (“[Qualified immunity] allows officials to carry out their duties confidently, without fear of incurring unexpected liability.”).
 

 Sheriff Sheahan argues that he is entitled to immunity because it was not sufficiently established in January 1993 that the dismissal of Cook County correctional officers based on their political affiliation was a violation of the officers’ First Amendment rights to freedom of association. Sheriff Sheahan points to the decisions of this court in
 
 Dimmig v. Wahl,
 
 983 F.2d 86 (7th Cir.1993), and
 
 Upton v. Thompson,
 
 930 F.2d 1209 (7th Cir.1991), both of which address the patronage dismissal of deputy sheriffs. Sheriff Sheahan suggests that these decisions, as of 1993, could reasonably be read to stand for the broad proposition that a deputy sheriff, as a matter of law, is a position for which party affiliation may be an appropriate requirement. Appel-lee further argues that this court did not make clear that this was not a proper reading of
 
 Dimmig
 
 and
 
 Upton
 
 until its 1994 decisions in
 
 Kolman v. Sheahan,
 
 31 F.3d 429, 432 (7th Cir.1994) and
 
 Zorzi v. County of Putnam,
 
 30 F.3d 885, 892 n. 3.
 

 While recognizing that the position of correctional officer is not the same as the position of deputy sheriff, appellee argues that a reasonable person would conclude that the two positions should be treated similarly for purposes of patronage dismissal. This is so, according to Sheriff Sheahan, because, under Illinois law, the method by which correctional officers and deputy sheriffs are removed from their positions is the same — for cause, upon written charges filed with the Cook County Sheriffs Merit Board.
 
 [1]
 

 III.
 

 The issue before this court is therefore whether it was sufficiently clear in January 1993 that initiating disciplinary proceedings against Cook County correctional officers due to their political affiliation violated the officers’ First Amendment rights. The constitutional right to be free from patronage employment practices was first recognized by the Supreme Court in
 
 Elrod v. Burns,
 
 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In
 
 Elrod,
 
 a ease which coincidently involved the Cook County Sheriffs Office, a plurality of the Court held the practice of patronage employment dismissals to be unconstitutional. Although the Court recognized that patronage dismissal might still be appropriate for certain government positions, namely those in which the practice is “necessary ... to foster and protect efficient and effective government,” the Court considered it clear that the positions at issue in
 
 Elrod,
 
 those of process server, clerk, and a bail-iffisecurity guard in the Juvenile Court of Cook County, are not among those positions for which patronage dismissal is permissible.
 
 Id.
 
 at 366-67, 96 S.Ct. at 2686-87. The Court’s opinion in
 
 Elrod
 
 “was read to establish a definitional-categorizational test whereby the protection accorded the plaintiff was based on whether the office was found to be a ‘policymaking’ or ‘confidential’ position.”
 
 See Meeks v. Grimes,
 
 779 F.2d 417, 419 (7th Cir.1985).
 

 In
 
 Branti v. Finkel,
 
 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court “moved away from the policymaking and confidential labels and towards a more functional analysis.”
 
 Id.
 
 The Court held that “the ultimate inquiry is not whether the label ‘policymaker’ or ‘confidential’ fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for
 
 *-1121
 
 the effective performance of the public office involved.”
 
 Id.
 
 at 518, 100 S.Ct. at 1295. This court has since consistently employed the “functional” approach developed in
 
 Bran-ti
 
 to determine whether party affiliation is an appropriate requirement for a given office.
 
 See, e.g., Matlock
 
 v.
 
 Barnes,
 
 982 F.2d 658, 664 (7th Cir.1991) (holding that investigator in Law Department of city of Gary, Indiana whose duties included taMng statements from witnesses and taking photographs of sites being investigated and who did not supervise anyone or have authority to settle cases was not subject to patronage dismissal);
 
 Upton,
 
 930 F.2d at 1215-16 (holding that deputy sheriffs were subject to patronage dismissal because they worked autonomously while on patrol and had wide discretion in performing their duties);
 
 Soderbeck v. Burnett County,
 
 752 F.2d 285, 288 (7th Cir.1985) (holding that employee of sheriffs office who did typing and acted as jail matron and laundress was not subject to patronage dismissal);
 
 Meeks,
 
 779 F.2d at 423-24 (holding that bailiff whose job involved service of process and court security was not subject to patronage dismissal).
 

 These cases made clear that an employee who performs primarily ministerial functions and who has little autonomy or discretion in performing his duties is not subject to patronage dismissal. Appellants allege in their complaint that Cook County correctional officers have no policymaking or decisionmaking authority except for that which is necessary to carry out the daily instructions given to them by their immediate supervisors as to the handling, supervision and care of the prisoners to whom they are assigned. These allegations place them squarely within the category of employees not subject to patronage employment practices. Nevertheless, Sheriff Sheahan counters that in 1993 an ambiguity existed in the law which could lead a reasonable officer to conclude that Cook County correctional officers were subject to patronage dismissal as a matter of law, regardless of their job responsibilities.
 

 Sheriff Sheahan argues that this court’s decisions in
 
 Dimmig
 
 and
 
 Upton
 
 muddied the legal waters by suggesting that deputy sheriffs were subject to patronage dismissal as a matter of law — in other words, that the job title of a discharged employee is dispositive in determining whether the employee is subject to patronage dismissal. According to Sheahan, it was only a small and logical step to conclude that correctional officers were likewise subject to patronage dismissal as a matter of law. Both the decisions of the Supreme Court and this court belie the reasonableness of such a conclusion.
 

 As early as 1975, this court rejected the notion that labels or job titles are relevant to the inquiry into whether patronage dismissal is permissible.
 
 See Burns v. Elrod,
 
 509 F.2d 1133, 1136 (7th Cir.1975),
 
 aff'd, Elrod v. Burns,
 
 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Defendant Elrod, the Sheriff of Cook County, argued that the plaintiffs in that case were “public officials” and that they therefore occupied policymak-ing positions as a matter of law. We stated: ‘We fail to see how the label ‘public official’ or ‘public employee’ advances the real inquiry ... [:] the specific duties and responsibilities of the particular employee, not his title.”
 
 Id.; see also Branti,
 
 445 U.S. at 518, 100 S.Ct. at 1295 (“In sum, the ultimate inquiry is not whether the label ‘policymaker’ or ‘confidential’ fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.”);
 
 Lohorn v. Michal,
 
 913 F.2d 327, 335 (7th Cir.1990) (stating that district court’s reliance on Indiana statute’s description of position as “upper level policymaking position” to hold position exempt from First Amendment protections as a matter of law was inappropriate).
 

 This court’s decision in
 
 Meeks v. Grimes,
 
 779 F.2d 417 (7th Cir.1985), further emphasized that generalizations should not be made as to the nature of a given position. This court declined to hold that bailiffs were “confidential” employees as a matter of law. We explained:
 

 To the extent the district court opinion stands for the proposition that bailiffs are confidential employees as a matter of law it is inapposite with
 
 Elrod
 
 and
 
 Branti ...
 
 [Wjhile we focus on the inherent powers of
 
 *-1120
 
 the office rather than the individual who occupies it,
 
 it is impossible to generalize about the nature of an individual type of position, such as bailiff or secretary; job responsibilities can vary greatly between different governmental units or even within a governmental unit.
 
 For this reason the test under
 
 Branti
 
 must be applied to each individual office, and status under that formulation is left to the trier of fact . to be determined.
 

 Meeks,
 
 779 F.2d at 420 n. 2 (internal citations omitted) (emphasis added). We remanded the ease to the district court to “consider each type of bailiff separately,” as there appeared “to be differentiations in the nature of positions classified generally as bailiffs.”
 
 Id.
 
 at 424. Appellee points to nothing in
 
 Upton
 
 or
 
 Dimmig
 
 contrary to this court’s clear language in
 
 Meeks.
 
 As we observed in that case, generalizations based on job title are contrary to the functional approach of
 
 Bran-ti,
 
 which focuses on the duties and responsibilities
 
 of
 
 a particular office.
 
 See id.
 
 at 420 n. 2. We therefore conclude that, as of 1993, the law was clear that the permissibility of dismissing an employee for patronage reasons was determined by reference to the inherent powers of the particular office, not to the title of that office.
 

 Even if appellee’s assertion that deputy sheriffs were subject to patronage dismissal as a matter of law in 1993 were correct, it would do little to advance their argument with respect to correctional officers, as the appellee has not attempted to argue that correctional officers and deputy sheriffs possess similar duties and responsibilities. Sheriff Sheahan urges only that deputy sheriffs and correctional officers should be treated in the same manner for purposes of patronage dismissal because neither can be removed from office “except for cause” under Illinois law. Sheriff Sheahan has made no suggestion to this court as to why this fact is relevant and/or determinative under
 
 Branti,
 
 nor has he directed the court’s attention to a decision of any court holding that the statutory method of removal is instructive in the analysis of patronage dismissal.
 
 Cf. Lohorn,
 
 913 F.2d at 335 (holding that district court’s reliance on Indiana statute’s description of position as “upper level policymaking position” to hold position exempt from First Amendment protections as a matter of law was inappropriate);
 
 Meeks,
 
 779 F.2d at 420-21 n. 2 (stating that “provisions of the Indiana Code making the plaintiffs at will employees are irrelevant”).
 
 [2]
 
 We cannot agree with Sheriff Sheahan that a reasonable official would have believed that deputy sheriffs and correctional officers were treated identically for patronage purposes, regardless of their job responsibilities, solely because the two offices were covered by the same statutory provision regarding termination.
 

 IV.
 

 Our rejection of Sheriff Sheahan’s arguments does not resolve this case, as the district court appears to have employed a different analysis in granting the Sheriffs motion for judgment on the pleadings. Relying on dicta in
 
 Kolman v. Sheahan,
 
 in which we stated “that
 
 Branti
 
 has produced a ■ ‘shambles’ of ‘inconsistent and unpredictable results,”’ the district court held that, as a general matter, “patronage dismissal law was not clearly established in 1993.” See
 
 Kolman,
 
 31 F.3d at 433-34 (quoting
 
 Rutan v. Republican Party of Ill.,
 
 497 U.S. 62, 111-12, 110 S.Ct. 2729, 2756-57, 111 L.Ed.2d 52 (1990) (Scalia, J. dissenting)). The district court therefore concluded that “[e]ven if plaintiffs held correctional officer positions with duties similar to those of the
 
 Meeks
 
 bailiffs, given the unruly state of patronage law in 1993, the court [could not] determine that a reasonable officer would have made the leap to find that Plaintiffs as correctional officers, like the
 
 Meeks
 
 bailiffs, were not subject to patronage dismissal.” In other words, the district court concluded that the law concerning patronage dismissals generally was so muddled that, absent a Seventh
 
 *-1119
 
 Circuit case directly on point, Sheriff Sheah-an was entitled to qualified immunity as a matter of law. We cannot adopt this conclusion.
 

 We do not take exception with the district court’s observation that considerable uncertainty exists in the area of patronage law. This is an observation that, as the district court noted, we have made often ourselves.
 
 See, e.g., Kolman,
 
 31 F.3d at 433-34;
 
 Pounds,
 
 970 F.2d at 341 (“Indeed, it is difficult to imagine how any plaintiff ... could have a clearly established right to be free from patronage dismissal unless a nearly identical case had already been decided.”);
 
 Upton,
 
 930 F.2d at 1218 (“[T]he indefiniteness of the applicable
 
 Branti
 
 standard has resulted in judicial confusion and inconsistency, a confusion that has naturally transpired to government officials having to apply
 
 Bran-ti”).
 

 The great uncertainty in this area results from the application of
 
 Branti’s
 
 deceptively simple standard to a wide range of government positions, which in turn involve an endless variety of job responsibilities and varying degrees of discretion and autonomy. “[Bjetween the strictly menial government worker (who, under
 
 Elrod
 
 and
 
 Branti,
 
 is clearly and completely protected form patronage firing) and the pofieymaker/eonfiden-tial assistant (whose protection from patronage firing is non-existent), there is a range of government positions for which the propriety of patronage firing has depended largely on the courts’ juggling of competing constitutional and political values.”
 
 Id.
 
 at 1213. As we have recognized previously, because uncertainty exists within this range, “[a] plaintiff has little chance of winning a case of first impression unless she occupies an extremely high or low rung on the bureaucratic ladder.”
 
 Pounds,
 
 970 F.2d at 341.
 

 The district court’s error lies in its conclusion that the uncertainty in applying the
 
 Branti
 
 standard precludes liability for the dismissal of those employees who do in fact occupy an extremely “low rung on the bureaucratic ladder.”
 
 See id.
 
 Because this ease is before us on a motion for judgment on the pleadings, we view the facts in the fight most favorable to the non-moving party. According to appellants, they received daily instructions from their immediate supervisors as to the handling, care and supervision of the prisoners to whom they were assigned. Accepting these allegations as true, it would appear that appellants are among those government workers “who are clearly and completely protected from patronage firing.”
 
 See Pounds,
 
 970 F.2d at 341. Dismissal of appellants’ case on the pleadings was therefore inappropriate.
 

 Of course, on remand, the district court may be presented with evidence that the position of correctional officer involves more autonomy or discretion than is alleged in appellants’ complaint. Once the factual record is developed, the district court may be required to revisit the qualified immunity issue. In making the determination whether the law was sufficiently clear in 1993 that correctional officers were not subject to patronage dismissal, the. district court should look to analogous ease law.
 
 See Pounds,
 
 970 F.2d at 342 (stating that plaintiff has burden of finding closely analogous cases showing that his right was clearly established);
 
 Rakovich v. Wade,
 
 850 F.2d 1180, 1209 (7th Cir. 1988) (stating that closely analogous cases are required to find constitutional right clearly established). To prevail, appellants need not point to a case holding unconstitutional the dismissal of Cook County correctional officers for patronage reasons.
 
 See Anderson,
 
 483 U.S. at 640, 107 S.Ct. at 3039 (“This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.”);
 
 Rakovich,
 
 850 F.2d at 1211 (“[T]he right should not be defined so intricately that invariably guiding law never can be found”). Appellants must, however, establish that, given the inherent powers of their positions and in the light of pre-existing law, the unlawfulness of Sheriff Sheahan’s actions was apparent.
 
 See Anderson,
 
 483 U.S. at 640, 107 S-Ct. at 3039.
 

 Appellants argue that the unlawfulness of Sheriff Sheahan’s actions was apparent because they performed ministerial functions analogous to those performed by the plaintiffs in
 
 Matlock, Meeks
 
 and
 
 Soderbeck.
 
 Appellants may be correct. However, it is also
 
 *-1118
 
 possible that the position of Cook County correctional officer involves more discretion or autonomy than the government positions involved in the cases cited and that the position of correctional officer is among those positions for which the propriety of patronage dismissal has not been clearly established. This is a determination which can be made by the district court only after it has developed the appropriate factual record.
 

 The judgment of the district court is REVERSED and the case Remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . Sheriff Sheahan refers to 55 ILCS 5/3-7012 (West 1993), which states in pertinent part: "[N]o deputy sheriff in the Counly Police Department, no full-time deputy sheriff not employed as a counly police officer or county correctional officer and no employee in the County Department of Corrections shall be removed, demoted or suspended except for cause, upon written charges with the Board by the Sheriff....”
 

 [2]
 

 . A careful reading of
 
 Meeks
 
 reveals that the fact that two employees are subject to identical termination procedures is irrelevant. In
 
 Meeks,
 
 this court directed the district court to consider separately the various bailiff positions in the Gaiy City Court. As we noted in that opinion, all of the bailiffs in that case were at wiE employees under the Indiana Code. 779 F.2d at 421 n. 2.