Madonna KLINE, Plaintiff–Appellant,

v.

DORIS HUGHES, in both her personal capacity and in her capacity as an official of Spencer County, Indiana, Defendant–Appellee.

No. 97–1737.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1997.

Decided Dec. 18, 1997.

Kenneth Collier–Magar (argued), Collier–Magar & Kirages, Indianapolis, IN, for Plaintiff–Appellant.

David L. Jones, Keith M. Wallace (argued), Jones & Wallace, Evansville, IN, for Defendant–Appellee.

Before BAUER, RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

Madonna Kline appeals from the district court's grant of summary judgment to Doris Hughes. The district court held that Ms. Hughes did not violate the First Amendment when she discharged Ms. Kline from her position as deputy county auditor. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I

BACKGROUND

On December 15, 1995, approximately two weeks before Doris Hughes, a Republican, officially assumed the office of Auditor of Spencer County, Indiana ("county auditor"), she sent a letter to the county auditor's office. The letter asked for the assistance of the current employees during the transition and notified Madonna Kline that her employment as a deputy auditor would be terminated when Ms. Hughes took office. Ms. Hughes also stated that she would hire a new first deputy. The outgoing county auditor, Dorothy Beckman, a Democrat, had employed five deputy auditors: Madonna Kline,

Sara Arnold, Christine Zimmerman, Marilyn King and Marcile Branch.[1] During Beckman's tenure, no particular deputy had been designated as first deputy auditor, but Ms. Kline had filled in for Beckman as secretary at county board meetings when Beckman could not attend.

On January 1, 1996, her first day in office, Ms. Hughes appointed Connie Houle to the deputy position formerly held by Ms. Kline. Ms. Hughes claims that she replaced Ms. Kline with Houle because she needed someone she could trust in that position. The other four deputy auditors were retained. After her termination, Ms. Kline brought this suit against Ms. Hughes, in her individual and official capacities, for violating Ms. Kline's First Amendment right to freedom of political association. Ms. Kline sought compensatory and punitive damages and the recovery of attorney's fees pursuant to 42 U.S.C. § 1988.

Cross-motions for summary judgment were filed by the parties. The district court granted summary judgment in favor of Ms. Hughes. The district court was of the view that the discharge of Ms. Kline had not violated her right to freedom of political association as defined by the Supreme Court of the United States in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

## II

### DISCUSSION

■ The district court correctly determined that the starting point of analysis must be the decisions of the Supreme Court of the United States in *Branti* and *Elrod*.[2] As our earlier cases have acknowledged, these cases are the cornerstones of the Supreme Court's jurisprudence in this area and therefore require our faithful adherence.[3] These cases establish the general rule that the patronage dismissal of a public employee violates the employee's First Amendment right to freedom of political association. However, these cases also establish an exception to that general rule. As refined by the Court in *Branti*, the general rule is inapplicable when "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1294.

■ This court, in an effort to describe more fully the contours of this exception, has framed the inquiry as " 'whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation.' " *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir.) (quoting *Heideman v. Wirsing*, 7 F.3d 659, 663 (7th Cir.1993)), *cert. denied*, —— U.S. ——, 116 S.Ct. 1853, 134 L.Ed.2d 953

---

1. Ms. Kline and Sara Arnold are Beckman's daughters.

2. The Supreme Court has affirmed the continuing vitality of *Branti* and *Elrod* in two more recent cases. *See O'Hare Truck Serv., Inc. v. City of Northlake*, —— U.S. ——, ——, 116 S.Ct. 2353, 2357, 135 L.Ed.2d 874 (1996); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 68–71, 110 S.Ct. 2729, 2733–35, 111 L.Ed.2d 52 (1990).

3. *See Americanos v. Carter*, 74 F.3d 138, 140–41 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1853, 134 L.Ed.2d 953 (1996); *Selch v. Letts*, 5 F.3d 1040, 1042–43 (7th Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Matlock v. Barnes*, 932 F.2d 658, 662 (7th Cir.), *cert. denied*, 502 U.S. 909, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991); *Lohorn v. Michal*, 913 F.2d 327, 331–33 (7th Cir.1990); *Tomczak v. City of Chicago*, 765 F.2d 633, 639–40 (7th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 313, 88

L.Ed.2d 289 (1985); *Livas v. Petka*, 711 F.2d 798, 800 (7th Cir.1983); *accord Cope v. Heltsley*, 128 F.3d 452, 457–58 (6th Cir.1997); *Fazio v. City and County of San Francisco*, 125 F.3d 1328, 1331–32 (9th Cir.1997); *Jenkins v. Medford*, 119 F.3d 1156, 1160–61 (4th Cir.1997) (en banc), *petition for cert. filed*, 66 U.S.L.W. 3364 (U.S. Nov. 5, 1997) (No. 97–792); *Roldan–Plumey v. Cerezo–Suarez*, 115 F.3d 58, 61 (1st Cir.1997); *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1352–53 (3d Cir.), *cert. denied*, 513 U.S. 811, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994); *McCabe v. Sharrett*, 12 F.3d 1558, 1565 (11th Cir.1994); *Regan v. Boogertman*, 984 F.2d 577, 579–80 (2d Cir.1993); *Correa v. Fischer*, 982 F.2d 931, 933 & n. 2 (5th Cir.1993); *Bauer v. Bosley*, 802 F.2d 1058, 1061–62 (8th Cir.1986), *cert. denied*, 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).

(1996). We have also stressed that *Branti* and *Elrod* require an examination of the "powers inherent in a given office," rather than the actual functions performed by the current occupant of that office. *Tomczak v. City of Chicago,* 765 F.2d 633, 640 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). The defendant bears the burden of showing that the exception to the general rule against patronage dismissals applies to the position in question. *See Milazzo v. O'Connell,* 108 F.3d 129, 132 (7th Cir.1997).

These corollary principles developed in our earlier cases are adequate guideposts for our decision today. Under Indiana law, a deputy county auditor may perform all the official duties of the county auditor; the county auditor is responsible for all the official acts of the deputy. *See* Ind.Code § 36–2–16–3(a) & (b). This arrangement makes clear that the office of deputy auditor plays a vital role in the implementation of the county auditor's policies. The power in that office is underlined by the legislature's specific authorization that the elected county auditor has the authority to appoint a first or chief deputy of her choice. *See* Ind.Code § 36–2–16–4. Thus, unless the first or chief deputy is selected from the then-current deputy auditors, the newly-elected county auditor is entitled to appoint another person as the first or chief deputy auditor and to terminate one of the existing deputy auditors.

We believe that this statutory scheme places the deputy county auditor in a position that carries with it the inherent ability to have "'meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation.'" *Americanos,* 74 F.3d at 141 (quoting *Heideman,* 7 F.3d at

663).[4] Indeed, the Supreme Court of Indiana specifically said that a deputy county auditor "is more than a clerk or an employe[e]; he is vested with the power by express statute to perform all duties of the auditor, and public policy requires that this should be so." *Wells v. State ex rel. Peden,* 175 Ind. 380, 94 N.E. 321, 323 (1911). Nor can we accept Ms. Kline's argument that she nevertheless falls under the general rule of *Branti* and *Elrod,* and not the exception, because the duties she actually performed as deputy auditor did not involve any policy-making discretion. *Tomczak* makes clear that we must look at the powers inherent in the office rather than the duties actually performed by the particular officeholder. *See* 765 F.2d at 640–41. Therefore, the district court correctly held that Ms. Hughes' decision to terminate Ms. Kline did not violate Ms. Kline's First Amendment rights.[5]

Conclusion

The district court correctly determined that the office of deputy county auditor, as currently established under the laws of Indiana, is an office for which party affiliation is an appropriate requirement. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

4. We therefore cannot accept Ms. Kline's argument that the exception to *Branti* and *Elrod* does not control in this case because the statute concerning deputy county auditors states only that the deputies *may* perform the official duties of an elected official. *See* Ind.Code § 36–2–16–3(a). It is true that the language of the statute gives the elected county auditor the discretion to give responsibilities to her deputies in areas in which principled disagreements over policy goals or implementation of those goals would occur. Nevertheless, the statute gives the elected auditor the right to assign to the deputy whatever duties

seem appropriate at any time. Therefore, the office of deputy auditor has, at all times, the potential to influence matters of policy. Under these circumstances, it is reasonable for the elected county auditor to consider party affiliation when appointing a deputy auditor.

5. Because we have determined that Ms. Hughes did not violate Ms. Kline's First Amendment rights, we need not consider Ms. Hughes' entitlement to qualified immunity.