Kevin THORNBURG, Plaintiff,

v.

Howard PETERS III, Steve Schnorf and Janis Cellini, State of Illinois Department of Central Management Services and State of Illinois Department of Human Services, Defendants.

No. 98–3176.

United States District Court, C.D. Illinois, Springfield Division.

June 28, 2001.

Mary Lee Leahy, Leahy Law Offices, Springfield, IL, for Plaintiff.

Jeffrey D. Colman, David Jimenez-Ekman, Andrew B. Birge, Deborah R. Alexander, Jenner & Block, Aylice M. Toohey, Chicago, IL, for Defendants.

## *ORDER*

SCOTT, District Judge.

This matter comes before the Court on the Defendants' Renewed Motion for Summary Judgment. The Plaintiff Kevin Thornburg claims that the Defendants denied him a state job because of his political party affiliation in violation of his First Amendment rights. He brings this action under 42 U.S.C. § 1983. Defendants move for summary judgment on their two affirmative defenses: (1) the position was one for which party affiliation is an appropriate requirement for the effective performance of the job; and (2) qualified immunity. For the reasons set forth below, the motion is denied. The Court also allows Thornburg's Motion for Leave to File Response to Statement of Undisputed Facts Instanter and Defendants' Motion for Leave to File its Supplemental Reply Memorandum. The Court denies Defendants' request for oral argument. The parties have briefed their positions well; therefore, the Court does not need oral argument.

In the summer of 1997, Kevin Thornburg applied for the position of Internal Security Investigator II (ISI II) at the Clyde Choate Mental Health Center in

Anna, Illinois (the Center). The Center is operated by the Illinois Department of Human Services (DHS). Thornburg received the top grade of "A" on the civil service exam for the position. He is a veteran and entitled to a veteran's preference for the position. He was not employed for the position.

He inquired to find out why he did not get the job. He alleges that he was told that the job was "Rutan" exempt. "Rutan" refers to *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). In *Rutan*, the Supreme Court decided that party affiliation or other political considerations could not generally be used as a factor in state hiring practices. Such practices violate the applicant's First Amendment rights.

Thornburg can establish his prima facie case if he can prove that he suffered an adverse employment action by the Defendants acting under color of law used political party affiliation as a job requirement. *Rutan*, 497 U.S. at 79, 110 S.Ct. 2729; *Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). For purposes of the Motion for Summary Judgment, the Defendants do not dispute that Thornburg can make out this prima facie case.

Defendants move for summary judgment on their two affirmative defenses. First, they assert that party affiliation is an appropriate requirement for the effective performance of the ISI II position. If true, they could properly use party affiliation as a necessary requirement to fill the position. *Branti*, 445 U.S. at 518, 100 S.Ct. 1287. Second, they assert qualified immunity because the law in 1997 did not clearly establish that they could not use political party affiliation as a qualification to hire an ISI II.

The ISI II position was within the Office of Inspector General (OIG) within the DHS. The written job description states that an ISI II performs the following essential functions:

Under direction of the Lead Investigator, performs highly responsible, sensitive and confidential investigative work; conducts the gathering and analysis of relevant facts and data concerning abuse and neglect investigations; compiles and analyzes facts pertaining to abuse and neglect cases under investigation; completes investigations by preparing reports, summarizing investigative activities and recommends conclusions to findings.

1. Conducts confidential, sensitive and complex investigations concerning reports of abuse and neglect at State-operated facilities; gathers data and evidence, interviews staff, receives reports and analyzes relevant evidence concerning cases of abuse and neglect; ensures that case reports are comprehensive and accurate; takes initial statements from staff.

2. Prepares written investigative reports upon the completion of the investigative process consisting of a summary of actions taken, findings, preservations of evidence and recommendation for corrective action and/or case closure.

3. Maintains confidential files pertaining to cases under investigation; responsible for ensuring the security of all pertinent information gathered during the investigatory process.

4. Recommends revisions in investigatory procedures and practices.

5. Serves as an expert witness and gives testimony in criminal and administrative hearings related to the conducting of or results of the investigation.

In 1996, the OIG established Guidelines that further describe the duties of an ISI II. The Guidelines state that an OIG investigator is assigned to a 24-hour hotline to

take reports of abuse or neglect or reports of death. The investigator must make an initial screening of the calls to decide how to respond to each call, and specifically to decide whether the situation requires immediate action. The investigator is required to notify the Bureau Chief of any report. The Bureau Chief reviews the information from the initial intake screening and notifies a Network Team Leader. The Network Team Leader (called the Lead Investigator in the job description) then assigns the case to the appropriate investigatory team. The investigator to whom the case is assigned conducts the investigation and writes a report in which he recommends that OIG adopt a finding that the allegations were substantiated, unsubstantiated or unfounded. The Guidelines use the term "Investigator" to describe the employee who takes intake information and conducts investigations; the Guidelines do not indicate whether the Investigator is an ISI II or some other employee, such as an Internal Security Investigator I (ISI I).

The remainder of the Guidelines contains procedures for (1) taking the initial intake information, (2) conducting investigations and (3) writing reports. The intake procedures consist of a number of questions to which the intake person must secure answers. The answers to the questions determine the agency to which the call will be directed: either the facility, such as the Center, at which the alleged events occurred; OIG; or the police. Minor matters are handled by the facility; more significant matters are investigated by OIG; matters involving allegations of criminal conduct are investigated by the police. The Guideline procedures for conducting investigations list common sources of evidence, types of evidence, and interviewing techniques. The procedures for preparing investigative reports explain the format of the reports and state that the investigator should recommend one of the three possible findings: substantiated, unsubstantiated, or unfounded.

The Defendants also submitted an affidavit of Sandra Mott, then Acting Deputy Inspector General of the OIG. Mott stated that 75 percent of an ISI II's duties involve investigating abuse and neglect and preparing reports concerning the investigations. She states that the investigation is "typically independent of any direct involvement by the Security Investigator's superior." She states that the Security Investigators must exercise discretion, without any direct oversight or approval required, in performing the following functions:

 a. determining during the intake process whether a report constitutes abuse or neglect, whether OIG should investigate, whether immediate action is necessary, and the steps the agency or facility should take;

 b. classifying investigations as high priority to be investigated by OIG, medium priority that can be investigated by the facility at issue or OIG, or low priority that should be investigated by the facility only;

 c. preparing an appropriate investigative plan including a process for gathering physical, demonstrative, documentary, or testimonial evidence;

 d. performing an appropriate investigation, pursuant to the plan or with modifications as needed made during the investigation;

 e. conducting appropriate interviews of witnesses; and

 f. preparing reports to become the basis of OIG recommendations and DHS actions against facilities.

Mott also states that the Guidelines gave ISI IIs more discretion in determining how to conduct investigations. Prior to establishing the 1996 Guidelines, an ISI II

used a checklist which had to be filled out completely for every case regardless of whether parts of the list were relevant under the particular facts of a case. Now, an ISI II has more discretion to determine what information to gather.

Mott also states that, "OIG and DHS rely on the advice contained in the report to take appropriate action against the facility or agency, which may include corrective action by the facility or agency, DHS action against the license of a facility or agency, or a referral to the Illinois state police for criminal prosecution of individuals."

Thornburg submitted the deposition testimony of several ISI IIs. Their statements are generally consistent with the job description, the Guidelines, and Mott's affidavit, but add some additional detail. The Guidelines only discussed complaints that come in through a hotline. The ISI IIs consistently state that the facilities caring for the aged and disabled which are subject to DHS supervision often report complaints directly. The facilities also have their own internal investigators, usually ISI Is. Those facility-employed investigators often investigate claims of abuse or neglect before the matters are turned over to OIG. The facility-employed investigators may conduct many or all of the interviews and collect some or all of the documentation before an ISI II reviews the file. The ISI II may then direct the facility-employed investigators and staff to secure additional information.

An ISI II can only make one of two recommended findings at the conclusion of an investigation: the complaint is substantiated, or the complaint is unsubstantiated. At some point he could also recommend a finding that a complaint was unfounded. ISI IIs cannot determine the actual finding that is made; they can only recommend a finding. According to the Guidelines, ISI IIs do not recommend any

discipline or other response to a complaint. The ISI II position further has no authority to recommend changes in facility operations, according to the Guidelines. The job description, however, states that an ISI II may recommend corrective action.

Some ISI IIs may have some supervisory responsibilities. The job description does not include any supervisory responsibilities, but, at least one ISI II stated that the Network Team Leader over him was also an ISI II. Another stated that he supervised the facility-employed investigators, but in context, this appears to mean that he directed them in particular investigations; he did not state that he was their supervisor for personnel matters.

The ISI IIs also confirmed that the Guidelines gave them greater flexibility in conducting investigations. They could choose the types of evidence to gather in a particular case. They could direct facility investigators to conduct follow-up interviews. The ISI II may also conduct additional interviews. The Network Team Leaders and the Bureau Chiefs still review all reports and can require changes or additional investigation. The greater flexibility in performing duties did not increase their authority beyond making one of the three recommended findings.

Some ISI IIs stated that they could contact the police directly if they believed any criminal conduct may have occurred. If criminal activity is suspected, the police take over the investigation. Others stated that they would confer with the Network Team Leader or Bureau Chief before contacting the police. All said that they would notify their superiors if they contacted the police.

Based on this evidence, the Defendants claim that no issues of fact exist concerning their affirmative defenses. They argue that the ISI II position is one for

which political affiliation is an appropriate requirement. At a minimum, they argue that they are entitled to qualified immunity on the issue. At summary judgment, the Defendants must present evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider the evidence presented in the light most favorable to Thornburg. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the Defendants have produced evidence showing that they are entitled to summary judgment, Thornburg must present evidence to show that issues of fact remain. *Matsushita Elec. Ind. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 576, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Defendants' evidence does not establish either of their affirmative defenses.

 The Seventh Circuit has established a functional test to determine whether the state may constitutionally make party affiliation a job requirement. The issue is whether the power inherent in any given office or position authorizes a person in that position to provide, "either directly or indirectly, meaningful input into government decisionmaking where there is room for principled disagreement on goals or their implementation." *Hudson v.* *Burke,* 913 F.2d 427, 431 (7th Cir.1990) *quoting Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981). Job titles or the specific activities that one individual may perform are not controlling. *See Tomczak v. City of Chicago,* 765 F.2d 633, 640–41 (7th Cir.1985).

The evidence presented, when read in the light most favorable to Thornburg, establishes that an ISI II performs two essential functions: (1) investigating claims of neglect or abuse at facilities subject to DHS jurisdiction, and (2) preparing reports in which the ISI II recommends one of three findings; substantiated, unsubstantiated, or unfounded. Incident to these two functions, an ISI II(a) screens incoming complaints to determine whether the situation constitutes an emergency, (b) gathers and maintains confidential information and material, (c) may decide whether the facility, OIG, or the police will investigate a given complaint, and (d) may testify at administrative or criminal proceedings. The ISI II may also recommend revisions in the investigative procedures he must follow. The evidence is conflicting concerning whether an ISI II may decided whether the facility, OIG, or police will investigate a given complaint. The job description does not indicate that an ISI II performs this function, and the Guidelines state that a Bureau Chief decides whether the OIG will investigate. At least some of the ISI IIs stated that they had the authority to contact the police directly.[1] There is at most an issue of fact

---

1. One ISI II stated that his Network Team Leader was also an ISI II. If the ISI II position was authorized to perform the duties of a Network Team Leader, then the ISI II position would have the same inherent authority as the Network Team Leader. *See e.g., Kline v. Hughes,* 131 F.3d 708 (7th Cir.1997) (deputy county auditor, by ordinance, could perform all the functions of county auditor and so had the same inherent authority as the county auditor). The job description, however, says that the ISI II works under the supervision of the Lead Investigator, or Network Team Leader. This inconsistency creates an issue of fact. The Court, therefore, will not find for summary judgment purposes that the ISI II position had the inherent authority to perform the functions of a Network Team Leader. Furthermore, the Court has almost no evidence on the functions of a Network Team Leader and so cannot determine whether that position could be filled on the basis of political considerations.

as to whether the ISI II can recommend corrective action; the job description states he may, while the Guidelines indicate he only recommends a finding of whether the claim is founded.

■ The Defendants have failed to establish that political party affiliation is an appropriate requirement for exercising the inherent power in the ISI II position. The authority vested in the ISI II position neither affects decisionmaking in an area in which there is room for reasoned disagreement on the governmental goals nor affects the implementation of policy. There is no room for disagreement on whether DHS should have a policy against abuse or neglect. The ISI II position's authority is also quite limited with respect to the implementation of the policy. The ISI II gathers information, writes reports, and (according to the Guidelines) recommends one of three specific findings which may be accepted or rejected by the Network Team Leaders or Bureau Chiefs. In accordance with the Guidelines, the ISI II cannot make the finding; he cannot recommend discipline; he cannot recommend changes in facility operations or procedures; he cannot recommend the means to implement the policy; he only investigates.

■ Persons performing investigative functions, including maintaining confidential information, cannot constitutionally be required to meet a political affiliation test. *Matlock v. Barnes*, 932 F.2d 658 (7th Cir. 1991). In *Matlock*, the Seventh Circuit held that employment decisions affecting investigator positions in the Gary, Indiana, Law Department could not be subject to political affiliation. The investigator position in *Matlock* had the inherent authority to investigate claims against the City of Gary, prepare written reports, and make recommendations for the disposition of the claims. 932 F.2d at 664.

Reading all the evidence in favor of Thornburg, an ISI II performs virtually identical duties: an ISI II investigates claims of neglect or abuse, prepares reports, and recommends a finding at the conclusion of his investigation. Both the ISI II position and the investigator position in *Matlock* have access to confidential information in order to perform these duties. Reading the evidence in favor of Thornburg, political party affiliation is not an appropriate job requirement for the ISI II.

Defendants cite a number of cases in which the Seventh Circuit found that political affiliation was an appropriate requirement. Virtually all of those cases involve positions with significantly greater authority than an ISI II. *Kline*, 131 F.3d at 708 (deputy county auditor, who by ordinance, could perform all the functions of county auditor); *Americanos v. Carter*, 74 F.3d 138 (7th Cir.1996)(Indiana Deputy Attorney General); *Heck v. City of Freeport*, 985 F.2d 305 (7th Cir.1993)(City Department Head who was a direct report to the Mayor); *Tomczak*, 765 F.2d at 633 (First Deputy Commissioner of the Chicago Department of Water).

The only other case involving investigators was *Hudson*. The investigators in *Hudson*, however, worked for the City of Chicago Finance Committee as legislative aids. The Court found that investigators contributed to political decisions made by the Committee. *Hudson*, 913 F.2d at 432. Unlike those investigators, the ISI II position has no authority to contribute to political decisions.

Defendants also argue that the Court should not consider any testimony from any ISI II. They argue that the particular activities of any given ISI II is irrelevant; the only issue is the inherent power in the office. The Court agrees that the inherent power is the only issue, but disagrees with the conclusion that the Court should not consider what ISI IIs generally do. Such

evidence is probative of the inherent power of the position. *See e.g., Hudson*, 913 F.2d at 433 (evidence regarding work performed by legislative investigators considered). *Cf. Flenner v. Sheahan*, 107 F.3d 459, 465 (7th Cir.1997) (on remand, the district court was directed to develop a factual record to ascertain the level of autonomy or discretion in the position at issue).[2] Even if the Court did not consider the deposition testimony of the ISI IIs, the outcome would be the same. The job description and the Guidelines when read favorably to Thornburg, state that an ISI II investigates under the supervision of a Lead Investigator, or Network Team Leader, and can only recommend one of two or three findings. This documentary evidence, which the Defendants argue states the inherent power of the ISI II position, supports the conclusion that the position does not have the inherent power either (1) to affect policy in areas where there is room for reasoned disagreement or (2) to affect the implementation of policy. The Defendants are not entitled to summary judgment on this affirmative defense.

■■■■ The Defendants also are not entitled to summary judgment on their qualified immunity defense. Public officials are protected from liability for civil damages if their conduct did not violate clearly established constitutional or statutory rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The defense therefore turns on the state of the law at the time of the alleged violation. *Flenner*, 107 F.3d at 461. Thornburg has the burden to prove the existence of the clearly established law. *Pounds v. Griep-*

*enstroh*, 970 F.2d 338, 342 (7th Cir.1992). He is not required to present the cases directly dealing with the ISI II position. *Flenner*, 107 F.3d at 461. He must only present closely analogous case law which establishes that, "given the inherent powers of their positions and in the light of pre-existing law, the unlawfulness of [the Defendants'] actions was apparent." *Id.* at 465.

In 1997, clearly established law made it apparent that party affiliation could not be used to fill the ISI II position. The law clearly established that political party affiliation was not an appropriate consideration for hiring a person for a position with the inherent authority to conduct investigations and make recommendations. *Matlock v. Barnes*, 932 F.2d at 658. When viewed in the light most favorably to Thornburg, the evidence shows that the ISI II position's discretionary authority to investigate abuse and neglect complaints is closely analogous to the investigator position in the *Matlock* case. Defendants, thus, were on notice that they could not use political party affiliation as a factor in filling ISI II positions just because an ISI II conducted confidential investigations.

Therefore, Defendants' Motion for Summary Judgment (d/e 63) is DENIED. Defendants' Motion for Order Setting Oral Argument on Defendants' Motion for Summary Judgment (d/e 114) is DENIED. Plaintiff's Motion for Leave to File Answer to Defendants' Statement of Undisputed Facts Instanter (d/e 117) is ALLOWED. Defendants' Motion for Leave to File a Supplemental Reply Memorandum in Sup-

---

**2.** The cases in which the particular duties of an individual were found to be irrelevant often involved situations in which a statute or ordinance invested a position with specific authority. *See e.g., Kline v. Hughes*, 131 F.3d 708 (7th Cir.1997) (deputy county auditor, by ordinance, could perform all the functions of county auditor and so had the same inherent authority as the county auditor); *Americanos v. Carter*, 74 F.3d 138 (7th Cir.1996)(Indiana Deputy Attorney General position had statutory authority to perform discretionary functions).

port of Renewed Motion for Summary Judgment (d/e 122) is ALLOWED.

IT IS THEREFORE SO ORDERED.