# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-1732

PHILLIP D. CARLSON and THOMAS R. SMITH,

*Plaintiffs-Appellees,*

*v.*

MARY E. GORECKI,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CV 9235—**Charles R. Norgle, Sr.**, *Judge.*

_____

ARGUED APRIL 15, 2004—DECIDED JUNE 29, 2004

_____

Before FLAUM, *Chief Judge*, and MANION and ROVNER,
*Circuit Judges.*

MANION, *Circuit Judge.* Phillip Carlson and Thomas Smith
worked as special investigators for the Kane County,
Illinois, State's Attorney's office. In December 2000, de-
fendant Mary Gorecki, the Kane County State's Attorney,
fired Carlson and Smith allegedly because of their speech on
matters of public concern, namely, their support of
Gorecki's opponent in the election and their allegations that
Gorecki was involved in various jobs-for-favors and
kickback schemes. Carlson and Smith filed this action under

42 U.S.C. § 1983, asserting that Gorecki's decision to fire them violated the First Amendment. After discovery, Gorecki filed a motion for summary judgment asserting that Carlson and Smith occupied policymaking or confidential positions and that she was entitled to qualified immunity. The court denied Gorecki's motion. She appeals, and for the following reasons, we affirm.

## I.

Both Phillip Carlson and Thomas Smith were hired as special investigators by the former Kane County State's Attorney, David Akemann. As investigators, both Carlson and Smith were routinely called upon, for example, to locate witnesses, serve subpoenas, transport witnesses to court, and interview witnesses. Both were supervised by an Assistant State's Attorney, John Barsanti. Beginning in 1986, Barsanti supervised investigators in the Kane County State's Attorneys' office. According to Barsanti, the main duty of Carlson and Smith was serving subpoenas. Both Barsanti and former State's Attorney Akemann testified that political affiliation did not matter to the investigator position. The evidence presented shows that neither Carlson nor Smith participated in the policymaking decisions of the office, and that political affiliation was not regarded as important to the job of investigator. Barsanti emphasized that the investigators were not given discretion in performing their jobs, but that on the rare occasions that the investigators were asked to "investigate" matters, they were instead given specific tasks to accomplish, such as taking a photograph of a building.

Gorecki won the election and replaced Akemann as Kane County State's Attorney. On her first day at work as state's

attorney in December, 2000, she fired[1] Carlson after he had been on the job for four years and Smith after he had been on the job for two years. For purposes of this appeal, it is undisputed that Gorecki fired Carlson and Smith because she viewed them as her political enemies and blamed them for an attempt to smear her politically. Carlson and Smith supported Gorecki's opponent in the primary election, and Gorecki blamed Carlson for exposing information regarding Gorecki's alleged involvement in kickback and jobs-for-favors schemes prior to taking office.[2] Gorecki similarly blamed Smith for authoring and circulating a letter criticizing her during the election for Kane County State's Attorney. According to Gorecki, despite the fact that she shared the same party affiliation as Carlson and Smith, they were her "political enemies."

---

[1] Gorecki maintains that the position of special investigator, a statutory appointment by the state's attorney, runs concurrently with the tenure of the appointing state's attorney. Thus, according to Gorecki, she did not fire Carlson and Smith, but merely refused to reappoint them as special investigators. Gorecki does acknowledge, however, that regardless of her statutory argument, "holdover" situations are possible. The plaintiffs claim that they were holdover employees and were fired by Gorecki on December 1, 2000. This factual dispute is immaterial because *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990), prohibits hiring, as well as firing, based on political affiliation when political affiliation is not appropriate for effective performance of the job. For ease of reference, we will regard the plaintiffs as fired from their jobs.

[2] The exposure of this information led to the Illinois bar authorities' decision to suspend Gorecki from the practice of law for a period of four months in 2003 due to statements she made in violation of the Rules of Professional Conduct. *See In re Gorecki*, No. 96299, 2003 WL 22725624 (Ill. Nov. 20, 2003).

After Carlson and Smith were fired, they filed this § 1983 suit against Gorecki alleging a First Amendment violation. Gorecki filed a motion for summary judgment on the grounds of qualified immunity, arguing that Carlson and Smith were policymakers or confidential employees. Gorecki admits that she fired Carlson and Smith solely for political reasons, i.e., their public support of her opponent and public criticism of her reputation for honesty. The court granted Carlson and Smith the right to take limited discovery before it ruled on the motion. Carlson and Smith deposed Barsanti, the First Assistant State's Attorney, and Akemann, the former State's Attorney.

Gorecki, in support of her argument that the plaintiffs were policymakers or confidential employees, relied on the evidence that investigators serve at the pleasure and discretion of the state's attorney and that statute provides that the state's attorney has the sole power to appoint, remove, and discipline a special investigator. The state's attorney is also permitted by statute to assign a special investigator to investigate civil, criminal, and administrative matters and serve as an agent of the grand jury. Of course, any investigation conducted by the special investigator is considered confidential, as are any conversations between the special investigator and the state's attorney or supervising assistant state's attorney. Likewise, the assignment involves a position of trust. The court, however, denied Gorecki's motion for summary judgment by finding that there were material issues of fact in dispute concerning whether the job of special investigator is a policymaking or confidential position.

## II.

We review de novo the district court's decision to deny Gorecki's motion for summary judgment on qualified im-

munity grounds. *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003). We start with the general proposition that public employees may not be made to suffer adverse job actions because of their political beliefs. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990); *Elrod v. Burns*, 427 U.S. 347 (1976). An exception to this general rule is permitted when the government employee responsible for the adverse action can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. *See, e.g., Branti v. Finkel*, 445 U.S. 507, 517-18 (1980).

Traditionally, we have referred to this exception for ease of reference as the "policymaking" or "confidential" employee exception because those terms fit the majority of situations where the exception applies. *See Hudson v. Burke*, 913 F.2d 427, 431 (7th Cir. 1990). The ultimate inquiry, however, is not a search for whether the job fits the appropriate label "policymaker" or "confidential," but whether party affiliation is an appropriate requirement for performing the job. *See Thompson v. Illinois Dept. of Professional Regulations*, 300 F.3d 750, 755-56 (7th Cir. 2002). Whether party affiliation is an appropriate requirement for performance of the job is determined by a functional test that examines the powers and duties inherent in the position. *See Hudson*, 913 F.2d at 431. This inquiry considers both the historical treatment of the position and the actual work performed by the people who hold the position. *See id.* at 433; *Flenner v. Sheahan*, 107 F.3d 459, 465 (7th Cir. 1997); *Thornburg v. Peters*, 155 F. Supp. 2d 984, 990-91 (C.D. Ill. 2001).

At the outset, Gorecki errs by focusing solely on whether the special investigator position fits within the "policymaker" or "confidential" labels. She ignores the broader and determinative question of whether party or political affilia-

tion is an appropriate requirement for the job. *See Thompson*, 300 F.3d at 755-56. In fact, there is sufficient evidence in the record to defeat Gorecki's motion for summary judgment, including Barsanti's deposition, indicating that political affiliation was not important to the job. Gorecki's reliance on *Hudson* is misplaced, because there we found that the plaintiff investigators who were fired by the City of Chicago contributed to controversial political decisions made by the politically charged city finance committee. *See Hudson*, 913 F.2d at 433. In *Hudson*, we found that the investigator position was inherently political in nature and involved investigators who were hired primarily due to their political affiliation. *Id.* at 432 ("Political affiliation was a primary reason [plaintiffs] were hired; all performed political work."). Here, in contrast, there is sufficient evidence for a jury to reject Gorecki's claim that the special investigator position contributed to political decisions or that the holders of the office were hired primarily due to their political affiliation.

Gorecki's decision to entirely eliminate the special investigator position after firing Carlson and Smith also makes it difficult for Gorecki to establish that political affiliation is important to the job. *Compare id.* at 433 (considering the job responsibilities of those who replaced the plaintiff investigators who were fired). In addition, the government official in *Hudson* testified that he envisioned an expanded role for the investigator position, including additional investigatory duties involving sensitive political information. *See id.* In contrast, Gorecki has failed to submit evidence that the investigators handled sensitive political information or even that she intended to use the job for that purpose in the future. It is possible to infer from Gorecki's decision to eliminate the special investigator position not only that it was a non-patronage job, but also that the position was not important at all for the functioning of the office.

Turning to Gorecki's focus on the policymaking and confidential monikers, as stated, we look both to the historical treatment of the job and to the work performed by those who presently hold the position to determine the inherent nature of the job. *See id.; Flenner,* 107 F.3d at 465; *Thornburg,* 155 F. Supp. 2d at 990-991. Much if not most of the evidence in the record reveals that the position involved almost exclusively ministerial functions such as locating witnesses, serving subpoenas, transporting witnesses to court, and interviewing witnesses. The special investigators had little, if any, direct contact with the state's attorney and were instead supervised by an assistant state's attorney. The state's attorney's office was not a small, intimate setting, but instead had over 30 assistant state's attorneys, in addition to various staff members. *But see Matlock v. Burns,* 932 F.2d 658, 665 (7th Cir. 1991) (acknowledging that at least in a small office setting, political animosity can be a legitimate basis for firing by an elected official forced to have constant, direct contact with a person viewed as a political enemy).

Gorecki's evidence, at best, shows that the position has the potential to impact policy. This is unhelpful, because all jobs under the authority of the state's attorney have this potential, depending upon how the state's attorney uses the position. The special investigator position, like any other job at the state's attorney office, requires a certain degree of confidentiality. Access to confidential information alone, however, does not mean that the job is confidential for purposes of applying the confidential employee exception to the ban on patronage dismissals. *See id.* at 665. Access to confidential files by a lower-level employee who, while not a policymaker, is openly politically hostile, may be reason for termination. However, as stated, the potential, speculative uses of the position are not significant in this case because we are construing the facts in the light most favorable to the plaintiffs, and because Gorecki has elimi-

nated the position without submitting any evidence that she will resurrect it with a political focus.

Finally, based on this record, Gorecki is not entitled to qualified immunity. The cloak of qualified immunity is removed from a government official if the plaintiffs show that the law prohibiting the government official's conduct was "clearly established." *Gregorich v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995). The test for whether the law was clearly established must be conducted based on the specific facts of the case, and not at a high level of generality. *See Greenberg v. Kmetko*, 922 F.2d 382, 383-84 (7th Cir. 1991).

Here, the plaintiffs have met their burden because this case is remarkably analogous to *Matlock*, 932 F.2d at 662. In *Matlock*, we held that a City of Gary, Indiana, law department investigator with the primary duties of investigating claims by visiting accident sites, interviewing witnesses, taking pictures, and preparing written recommendations was not a policymaker or confidential employee. *Matlock*, 932 F.2d at 664.

Based on the record, Carlson and Smith had less discretion and responsibility than the legal investigator in *Matlock*. As far as we know from the summary judgment record, the main duties of Carlson and Smith were ministerial functions such as locating witnesses, serving subpoenas, transporting witnesses to court, and interviewing witnesses. On the rare occasions that they were required to submit a report, the report was merely factual and did not contain recommendations. In *Matlock*, we rejected the government's arguments that the investigator was a policymaker because he exercised a great deal of discretion in how he carried out investigations, and we also rejected the claim that the position was confidential because the investigator had unlimited access to confidential files. *See id.* at 662. Essentially, Gorecki is making the same argument here. Her claim

of qualified immunity fails because the record shows that Carlson and Smith had jobs involving functions more ministerial than the functions of the investigator in *Matlock*. *See Upton v. Thompson*, 930 F.2d 1209, 1213 (7th Cir. 1991) (holding that a strictly menial government worker is clearly and completely protected from patronage firing). The special investigator position in Kane County was menial to such an extent that, after the firing of Carlson and Smith, the position was entirely eliminated.

In closing, we emphasize the limited nature of our holding that is dictated by the specific and somewhat limited facts of this record. A state's attorney is clearly not prohibited from utilizing the position of special investigator as a policymaker or confidant so as to make political affiliation an appropriate consideration for the job. Here, the defendant has presented no evidence that the positions the two plaintiffs held rose to a level requiring political sensitivity. The nonessential quality of these jobs is underscored by the fact that Gorecki saw no need to fill the vacancies created.

## III.

The district court properly denied Gorecki's motion for summary judgment. Gorecki has failed to submit sufficient evidence for us to conclude as a matter of law that party affiliation is an appropriate requirement for the special investigator position. Instead, substantial evidence shows that the position involves primarily ministerial tasks such as locating witnesses, serving subpoenas, transporting witnesses to court, and interviewing witnesses. Carlson and Smith have met their burden of identifying closely analogous case law prohibiting a very similar political firing of a legal investigator, and Gorecki is thus not entitled to qualified immunity. For these reasons, we AFFIRM the decision of the district court.

No. 03-1732

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*